**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LAURA TWEED, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>NAPLETON ENTERPRISES, LLC, an Illinois Limited Liability Company,<br><br>*Defendant*. | **CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

1. Plaintiff, Laura Tweed, brings this action against Defendant, Napleton Enterprises, LLC, to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

**NATURE OF THE ACTION**

2. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3. Defendant owns automotive dealerships that sell vehicles for individuals and businesses. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call, in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

6. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Illinois.

## PARTIES

7. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Osceola County, Florida.

8. Defendant is an Illinois limited liability company whose principal office is located at One Oakbrook Terrace 6th Floor, Oakbrook Terrace, IL 60181. Defendant directs, markets, and provides its business activities throughout the State of Illinois.

**THE TCPA**

9. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

10. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

11. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

12. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

13. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

14. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous

disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

15. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

16. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

17. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

18. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

19. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

20. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

21. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***). (emphasis added).

22. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## **FACTS**

23. On or about February 21, 2018, Defendant sent the following telemarketing text messages to Plaintiff's cellular telephone number ending in 1993 (the "1993 Number"):



24. Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

25. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff an automobile.

26. Additionally, the text message provides a "Mktg opt-out" telephone number which Plaintiff could call to request Defendant no longer text message her. This marketing opt-out inclusion in the message is an admission by Defendant that its communication was sent for marketing purposes.

27. The information contained in the text message advertises Defendant's services, which Defendant sends to promote its business.

28. Upon information and belief, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

29. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted using an ATDS.

30. Plaintiff is the subscriber and sole user of the 1993 Number and is financially responsible for phone service to the 1993 Number.

31. The impersonal and generic nature of Defendant's text message demonstrates that Defendant utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

32. The text messages originated from telephone number 206-91, a number which upon information and belief is owned and operated by Defendant.

33. The number used by Defendant (206-91) is known as a "short code," a standard 5-digit code that enables Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

34. Short codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS

gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a short code.

35. Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the capacity to store telephone numbers using a random or sequential generator, and to dial such numbers from a list without human intervention.

36. To send the text messages, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

37. The Platform has the capacity to store telephone numbers, which capacity was in fact utilized by Defendant.

38. The Platform has the capacity to generate sequential numbers, which capacity was in fact utilized by Defendant.

39. The Platform has the capacity to dial numbers in sequential order, which capacity was in fact utilized by Defendant.

40. The Platform has the capacity to dial numbers from a list of numbers, which capacity was in fact utilized by Defendant.

41. The Platform has the capacity to dial numbers without human intervention, which capacity was in fact utilized by Defendant.

42. The Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

43. To transmit the messages at issue, the Platform automatically executed the following steps:

a. The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

b. The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

c. Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

d. Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant. Each mobile carrier then sent the message to its customer's mobile telephone.

44. The above execution these instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

45. Further, the Platform "throttles" the transmission of the text messages depending on feedback it receives from the mobile carrier networks. In other words, the platform controls how quickly messages are transmitted depending on network congestion. The platform performs this throttling function automatically and does not allow a human to control the function.

46. The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



47. Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

48. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

49. Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant, (2) using an automatic telephone dialing system, (3) for the purpose of soliciting Defendant's goods and services, and (4) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**

50. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

51. Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States

without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

52. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

53. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> **(1)** Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;
>
> **(2)** Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;
>
> **(3)** Whether Defendant's conduct was knowing and willful;
>
> **(4)** Whether Defendant is liable for damages, and the amount of such damages; and
>
> **(5)** Whether Defendant should be enjoined from such conduct in the future.

54. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

55. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

56. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### **PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

57. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

58. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

59. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

60. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

61. Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

62. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

63. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

64. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

65. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

## COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)
(On Behalf of Plaintiff and the Class)

66. Plaintiff re-allege and incorporate paragraphs 1-58 as if fully set forth herein.

67. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

68. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that its conduct was a violation of the TCPA.

69. Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

70. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiff, Laura Tweed, on behalf of herself and the other members of the Class, pray for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

c. An award of actual and statutory damages; and

d. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

Dated: November 20, 2019
**SHAMIS & GENTILE, P.A.**
/s/ Andrew J. Shamis
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, FL 33132
Telephone: 305-479-2299

*Counsel for Plaintiff and the Class*